Clifton F. ARLEDGE and United States Fidelity and Guaranty Company, Plaintiffs-Appellees,

v.

GULF OIL CORPORATION, Defendant-Appellant.

No. 76–1307.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1978.

L. F. Sams, Jr., Tupelo, Miss., for defendant-appellant.

Robert G. Gilder, Southaven, Miss., for C. Arledge.

## ON PETITION FOR REHEARING

Before HILL, RUBIN, and VANCE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Once again, at the urging of the partially successful appellant, we examine the Mississippi cases in this diversity action to determine under what circumstances a lessor may be liable to a third person who suffers personal injury on the leased premises. Gulf seeks reconsideration of our prior ruling and the entry of judgment in its favor as a matter of law. We deny its petition. But, because its discussion of the Mississippi cases appears to warrant some re-evaluation of our prior opinion, we attempt to clarify what we believe to be the applicable Mississippi rules.[1]

Our prior opinion indicates that Gulf, as lessor, can be held liable to the third-party plaintiff, injured on leased premises while employed by the lessee, only if Gulf failed "to perform an agreement, supported by

consideration, to effect specific repairs." *Arledge v. Gulf Oil Corp.*, 5 Cir. 1978, 571 F.2d 1388, 1390, citing *Hodges v. Hilton*, 1935, 173 Miss. 343, 161 So. 686. We found the written lease ambiguous on this issue and held extrinsic evidence admissible to determine the parties' intention. We hold to the view that this correctly reflects the present Mississippi rule.

It may be helpful, however, to clarify our interpretation of the facts that must be shown to meet the criteria of *Hodges v. Hilton, supra.* Gulf contends that our prior opinion erroneously equates an agreement to effect specific repairs, which may create liability in Mississippi, with a specific agreement to make repairs to the leased premises that does not state in express terms the repairs to be made and which is not sufficient to create a cause of action. Because we have apparently not made our view of this subject clear, we amplify it.

■ For over eighty years, it has been established in Mississippi that a lessor has no implied duty to repair leased premises. *Jones v. Millsaps*, 1893, 71 Miss. 10, 14 So. 440. *Rich v. Swalm*, 1931, 161 Miss. 505, 137 So. 325, explained the Mississippi rule: because no duty to repair arises from the lessor's status, absent concealment or fraud, an express agreement, general in nature, by a lessor to repair the leased premises is a "purely contractual" undertaking between the parties to the lease; the lessor's failure to perform his contract does not create liability for personal injuries suffered as a result of the landlord's failure to perform the contract because such injuries are not, under Mississippi law, reasonably foreseeable.

*Hodges v. Hilton, supra*, states an exception to that rule, which is potentially applicable here. The facts of the case clarify its import. There, the tenant, prior to entering the lease, observed that the porch of the premises appeared to be in unsafe condition

[1]. The view is, of course, based on the cases decided to date by Mississippi appellate courts. Should later Mississippi decisions indicate that our view is erroneous, then, of course, our view should be reconsidered. We make this observation out of necessity: we see the Mississippi rule as through a glass darkly (1 Corinthians XVI, 12 c. 55), only from the cases it has decided.

and, as part of the consideration for entering the lease, obtained the agreement of the landlord to repair it. The Mississippi Supreme Court held this was an agreement to make specific repairs and that, therefore, the lessor "was bound to anticipate that personal injuries would naturally and probably result from the use of the porch in that condition." *Id.* 161 So. at 687.[2]

In a later case, *Wilbourn v. Hardin*, Miss. 1970, 234 So.2d 606, the lessor agreed to make any required structural repairs to a wall standing beside the leased parking lot. This was held to be "a general agreement to repair rather than an obligation to make specific repairs," thus precluding an award for damages to a car when the wall fell.

■ Thus, it may be necessary for the plaintiff to show not only that Gulf agreed to repair the hydraulic lift but also that, when it did, the defects were in existence and known to the parties. It is apparent that the defect in the lift occurred after the lease was executed on January 25, 1972. However, if the lease contained a "general agreement to repair" and, thereafter, the landlord agreed to make specific repairs, for consideration, we think it likely a Mississippi court would hold the landlord able to foresee the danger of personal injury that might naturally and probably result from its failure to perform the contract, and thus hold the landlord liable under an extension of the doctrine of *Hodges v. Hilton, supra.* Counsel have cited no case expressly so holding, nor any case expressly rejecting such a claim; nor have we found any save those we have cited, and none is directly on point. Because we cannot know what Mississippi courts will rule on a point until they

do so, and there is no Mississippi procedure whereby we may request an interpretation from the Mississippi Supreme Court, we are obliged to decide what we think a Mississippi court would hold. In doing this, we take into account the prevailing trend throughout the United States,[3] giving due deference to the doctrinal conservatism manifested by Mississippi courts on the issue.

■ Finally, we note that Mississippi requires consideration for the promise. Under Mississippi law "All that is needed to constitute a valid consideration to support an agreement or contract is either a benefit to the promisor or a detriment to the promisee. If either of these requirements exist, there is sufficient consideration." *American Olean Tile Co. v. Morton*, 1963, 247 Miss. 886, 157 So.2d 788, 790. *See also Lowndes Cooperative Assn. v. Lipsey*, 1961, 240 Miss. 71, 126 So.2d 276, 278. Such a benefit might be supplied in this case by the commercial advantage that would flow to Gulf if a service station selling its trademarked and widely advertised wares were able to operate two lifts rather than one and sell more of its products, and, through the incentive, if any, thereby created to the service station tenant-operator who has, after all, a simple one year lease renewable only through the joint agreement of him and Gulf. Whether or not there was an adequate consideration of this or any other kind must be determined on remand.

The motion for reconsideration is DENIED.

---

2. Nothing in *Hiller v. Wiley*, 1942, 192 Miss. 488, 5 So.2d 489, *rev'd on rehearing*, 6 So.2d 317, or in *Ford v. Pythian Bondholders Protective Committee*, 1955, 223 Miss. 630, 78 So.2d 743 suggests that *Hodges, supra*, has been overruled. Nevertheless, it is clear from these cases, and from the earlier jurisprudence in *Jones, supra*, and *Rich, supra*, that *Hodges* is a narrow exception to a doctrine generally denying tort damages for personal injuries resulting from the lessor's failure to repair. The question before us is whether this case comes within that exception.

3. The rule in most American states is now broader. *See, e. g., Davis v. Marr*, 1966, 160 Colo. 27, 413 P.2d 707, 709–10; *Zuroski v. Strickland's Estate*, 1964, 176 Neb. 633, 126 N.W.2d 888; *Putnam v. Stout*, 1976, 38 N.Y.2d 607, 381 N.Y.S.2d 848, 345 N.E.2d 319, and cases cited therein. *See also* Annot., Breach of Lessor's Agreement as Grounds of Liability for Personal Injury to Tenant or One in Privity with Latter, 78 A.L.R.2d 1238, § 4.